UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RANDY R. RICHARD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-158 RM |
| | ) | |
| SUPERINTENDENT, INDIANA STATE PRISON, | ) ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

Petitioner Randy Richard, a prisoner confined at the Indiana State Prison, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 dealing with loss of earned credit time in a prison disciplinary hearing. On November 4, 2007, correctional officers searched Mr. Richard's locker, found what they considered to be a large quantity of food items, and wrote a conduct report against him for unauthorized possession of property belonging to another. On November 7, 2007, a disciplinary hearing body ("DHB") found Mr. Richard guilty, took ninety days of earned credit time away from him, and demoted him to a lower Credit Time Earning Classification. Mr. Richard appealed unsuccessfully to the superintendent and the final reviewing authority.

On October 14, 2008, the court granted Mr. Richard's petition for writ of habeas corpus on the ground that there was no evidence in the record to support the charge of possession of property belonging to another. The respondent has now filed a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59 or, alternatively, pursuant to Fed.

R. Civ. P. 60. For the reasons that follow, the court denies the respondent's motion to alter or amend the judgment.

> Altering or amending judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact. Vacating a judgment under Rule 60(b) is permissible for a variety of reasons, including mistake, excusable neglect, newly discovered evidence and fraud. While the two rules have similarities, "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." Rule 59(e), by contrast, requires that the movant "clearly establish" one of the aforementioned grounds for relief.

Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. Ill. 2006) (Citations omitted).

The respondent presents no valid argument undermining the court's conclusion that no evidence in the record supported the DHB's finding of guilt. Accordingly, he is not entitled to have the judgment altered or amended under Rule 59 or to obtain relief from the court's judgment and order under Rule 60.

In its order granting the petition for writ of habeas corpus, the court noted that the arguments presented by the respondent in his memorandum in support of his response to order bore little, if any, relationship to the disciplinary proceedings against Mr. Richard. The court then proceeded to review the administrative record for any evidence in the record that could have supported the finding of guilt. When it found none, it granted the writ.

In the respondent's motion to alter or amend judgment, his counsel basically says "oops," and states that her legal assistant filed the wrong memorandum with the court. Respondent's counsel attached a copy of the memorandum she states that she intended to file to the motion to alter or amend judgment, and "asks the court to consider the

Memorandu, (sic) and to amend its Judgment after considering the proper arguments made in the response." (Docket No. 18 at p. 3).

The only issue before the court is whether there was any evidence in the administrative record to support the DHB's conclusions. Superintendent, Mass. Correctional Institution v. Hill, 472 U.S. 445, 455 (1985), requires that there must be some evidence in the record to support a finding of guilt. The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is very modest; there need only be "some evidence" to support the decision of the prison disciplinary board."*Id..* at 455. A reviewing court must uphold a finding of guilt if "there is any evidence in the record that could support the conclusion reached" by the board. *Id.* at 457. In the appropriate circumstances, the conduct report alone may be sufficient evidence to support a finding of guilt. See McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). The court must carefully scrutinize the sufficiency of the disciplinary board's statement of facts it relied on to find the prisoner guilty. Redding v. Fairman, 717 F.2d 1105, 1116 (7th Cir. 1983).

After concluding that the respondent's response to order was nonresponsive, the court, pursuant to Redding v. Fairman, examined the administrative record submitted by the respondent to see if there was any argument the respondent could have made that would suggest there was sufficient evidence in the record to support the DHB's finding that Mr. Richard possessed property belonging to others. The court concluded that there was no evidence in the record that would justify a finding of guilt. It will now consider the

3

arguments respondent's counsel intended to make to see if they point to any evidence in the record supporting Mr. Richard's guilt.

As the court noted in its October 14 order, "[i]n its Report of Disciplinary Hearing, the DHB states 'the following evidence was relied on to reach the decision in this hearing' (Docket No.9 Exhibit D). The DHB checked the boxes for 'staff reports,' 'statement of the offender,' and 'physical evidence' as the evidence it relied on to find Mr. Richard guilty. (*Id.*)." The court discussed each of these grounds, explaining why they did not support the finding of guilt. The respondent argues that staff reports and Mr. Richard's statements at the hearing support the conclusion that he possessed property belonging to another.

The respondent states in his belated memorandum that:

> the conduct report provided "some evidence" that Richard violated disciplinary rule B215 which prohibits the:
>
>> Unauthorized possession, destruction, alteration, damage to, or theft of state property or property belonging to another (Exhibit F2)."

(Docket No. 18 Exhibit 1 at p. 5).

The respondent argues that "[t]he conduct report reflects that 'a massive quantity of food products' was found in Richard's locker (Exhibit A1). A conduct report alone may provide 'some evidence' of guilt . . .." (*Id.* at p. 6). The respondent further states that "the information listed in the conduct report prepared by Officer Takacs was corroborated by Officer Parnell's written statement in which Parnell revealed that he, too, saw 'a large quantity of food items in offender Richard's possession ' (Exhibit C)." (*Id.* at p. 6).

It is true that a conduct report may provide some evidence of guilt. But the conduct report written against Mr. Richard does not. The conduct report and Officer Parnell's statement would support a charge that Mr. Richard was a hoarder and possessed a lot of food items in his locker. But the conduct report didn't charge Mr. Richard with possessing a large amount of food — it charged him with possessing the property of others. Neither Officer Takacs nor Officer Parnell had any personal knowledge that the property found in Mr. Richard's locker belonged to anyone other than Mr. Richard. Officer Takacs's suggestion that some of the food items might belong to others is mere speculation. It is not evidence — it is a guess. As stated in the October 14 order, "[t]he conduct report is sufficient, perhaps, to bring charges against Mr. Richard for possession of the property of another. But it does not, by itself, support a finding of guilt on that charge. (Docket No. 14 at p. 6).

The conduct report also states that Mr. Richard couldn't produce commissary receipts for the food items. This is not evidence that the food items found in Mr. Richard's possession belonged to anyone other than Mr. Richard. If prison officials researched Mr. Richard's commissary records and found that he never bought any food from the commissary, that he bought less food than he had in his locker when the officers searched it, or that he possessed items of food the record establishes that he never bought, that would be evidence that would support a finding of guilt.

The record establishes that prison officials reviewed Mr. Richard's commissary purchases because the superintendent's response to Mr. Richard's appeal states that Mr.

Richard's "oldest receipt goes back to February 2007" (Docket No. 9 Exhibit E2). If Mr. Richard's commissary receipts established that he never bought food, that he bought less food than he had in his possession, or that he never bought some of the items found in his possession, the court would expect that to be noted as supporting the conclusion that he was in possession of property belonging to others. But the superintendent did nothing of the kind. Rather, he concluded by telling Mr. Richard "you obviously were running a store." (Docket No.9 Exhibit E2). The Superintendent appears to be saying essentially that Mr. Richard could well have purchased all of the food items found in his possession, so the quantity of food found in his possession did not support a charge that he possessed the property of others, but that the large quantity of food in his locker might mean that he was running a store and selling items to other inmates — which is a different disciplinary charge. The final reviewing authority's response contained no facts, and simply concluded that "[t]he superintendent's response is sufficient." (Docket No. 9 Exhibit E4).

The Fourteenth Amendment's due process clause guarantees prisoners advance written notice of the charges "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Wolff v. McDonnell, 418 U.S. 539, 564 (1974). There are occasions when prison officials may change the charge at the hearing, or even on appeal, so long as the new charge also conforms to the facts stated in the conduct report. For example:

> . . . Wolff v. McDonnell does not require the infraction notice to specify whether the offense charged was serious or minor. Here, the charge was possession of the Valium, and while the change from a Rule 24 charge to a Rule 3 charge raised the potential penalties, the factual basis for both was

6

>possession of the same Valium at the same time. It is evident that the conduct violation report gave Holt all of the information he needed to make his defense.

Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir. 1992).

Changing the rule Holt was accused of violating did not deny him due process because the conduct violation report stated facts that supported the corrected charge and provided the facts he needed to prepare his defense against that charge. But in this case, the conduct report did not state facts that could conceivably place Mr. Richard on notice that he would have to defend himself against a charge of running a store. The conduct report specifically accuses Mr. Richard of possessing property belonging to others. The defense against that charge is that the property belonged to him. That the property belonged to him, however, is not a defense against running a store, and the conduct report did not put him on notice that he need do anything to refute the charge against him other than asserting that he owned the food found in his locker.

The factual predicate for the charge of running a store is that the charged inmate owns property he is selling to other inmates. The factual predicate for a charge of possessing items belonging to others is that the charged inmate doesn't own the items found in his possession. These are mutually exclusive charges, so they can't be switched for one another by prison officials at or after the hearing.

The superintendent's decision on appeal is confusing. It's unclear whether he mistakenly thought that the conduct report accused Mr. Richard of running a store or whether he perceived that the evidence did not support the charge of possessing property

7

belonging another and intended to change the charge to running a store. This court has seen many instances where the charge is changed on appeal to fit the evidence, but usually it is done explicitly. In any event, to the extent the superintendent intended to affirm the DHB's finding of guilt by changing the charge from possessing property belonging to others to a charge of running a store, he violated <u>Wolff</u>'s notice requirements.

The respondent next argues in the memorandum in support of his motion to alter or amend judgment that:

> Additional evidence of guilt was provided by Richard who admitted during the hearing that "it's my stuff," and stated "I don't remember the last time I placed a commissary order" (Exhibit D). Although Richard told the DHB that he "wasn't running a store," Richard's inability to produce receipts for the large amount of food items discovered in his locker undermines his claim that he had purchased all the food items. (Exhibits A1-2 & D). As such, there was "some evidence" of Richard's unauthorized possession of state property or property belonging to another.

(Docket No. 18 Exhibit 1 at p. 6).

The court addressed Mr. Richard's statements to the DHB in its October 14 order, and explained why they didn't support a finding of guilt. The respondent's submissions don't argue why the court was wrong it its initial determination — as would be expected of a motion to alter or amend judgment — and the arguments presented don't support a conclusion that Mr. Richard's statements at the hearing support a finding that he possessed the property of others.

The respondent argues that Mr. Richard "admitted" during the hearing that the property found in his locker was his. Had Mr. Richard been charged with possessing his own property, then his "admission" that the property found in his locker was his stuff

8

would be a silver bullet. But Mr. Richard was charged with possessing someone else's property. Accordingly, his statement that "its my stuff, I paid for it" (Docket No. 9 Exhibit D) was a denial of that charge, not an admission of guilt.

The respondent suggests that Mr. Richard's statement at the hearing that he didn't "remember the last time I placed a commissary order" (Docket No. 9 Exhibit D) supported the finding of guilt. The respondent, however, does not state how it supports a finding of guilt, and the court is unable to see how it might be "some evidence" of guilt. That Mr. Richard didn't recall when he last ordered commissary in no way suggests that the food items found in his possession belonged to someone other than himself, or that he was running a store, or anything else except that his memory was not as good as it might have been.

The respondent next argues that although Richard told the DHB he wasn't "running a store," his "inability to produce receipts for the large amount of food items discovered in his locker undermines his claim that he had purchased all the food items." (Docket No. 18 Exhibit 1 at p. 6). The conduct report didn't charge Mr. Richard with running a store and, as previously explained in this order, the board couldn't find him guilty of running a store without violating Wolff's notice requirements. Accordingly, Mr. Richard's statement that he wasn't running a store is irrelevant to the charge against him. That he had not kept all his commissary receipts does not undermine his claim that he had purchased the food items found in his possession. Admittedly, that he did not have all of his commissary receipts might raise a suspicion that he did not buy all of the food items found in his locker.

But a suspicion is not evidence, and there is no evidence in the administrative record that supports Officer Takacs's suspicion that Mr. Richard did not purchase all of the food items found in his locker. The record submitted by the respondent reflects that prison officials had access to Mr. Richard's commissary records, so they didn't have to rely on Mr. Richard to keep all of his commissary receipts. The record also reflects that prison officials reviewed the commissary records, so they could easily determine what Mr. Richard ordered and when he ordered it.

The Superintendent's comments on appeal indicate that Mr. Richard's commissary records contained nothing inculpatory against Mr. Richard. But inculpatory or exculpatory, neither the commissary records themselves nor anyone's statement about what they show, are a part of the record submitted to this court. Even if the commissary records would have somehow been inculpatory, they are not in the record and without them there is no evidence to support a finding that Mr. Richard possessed the property of another.

Officer Takacs may properly have been suspicious of wrongdoing if the amount of commissary in Mr. Richard's locker really was unusually large. But even if his suspicions were reasonable, there does not appear to have been much of an investigative followup to determine if his suspicions could be substantiated. The result of the failure to include the commissary receipts, which were available and reviewed by the superintendent, in the administrative record is that there is no inculpatory evidence in this record.

Finally, the respondent argues that:

> even if a due process error has been committed, the burden is on the petitioner to show that the error had a substantial and injurious effect on the

> outcome of the proceeding. O'Neal v. McAninch, 513 U.S. 432 (1995). Richard has failed to show that the outcome of his case would have changed if the alleged error had not occurred, as the evidence would have remained the same, and thus, there is no reason to conclude that the finding of the DHB would have been different.

(Docket No. 18 Exhibit 1 at p. 6).

This is not a case where a habeas petitioner asserts that he got the conduct report twenty-three hours before the hearing, so violating the requirement of Wolff v. McDonnell, 418 U.S. 539 (1974), that he receive twenty-four hours advance written notice of the charges against him, or some similar technical violation of one of Wolff's precepts. In such cases the "harmless error" argument presented by the respondent might have merit. But the only claim before the court in this case is that there wasn't sufficient evidence to support the DHB's finding of guilt as Superintendent, Mass. Correctional Institution v. Hill requires. In a sufficiency of the evidence case, proof that there was no evidence to support a finding of guilt automatically, and unescapably, establishes both a "substantial and injurious effect on the outcome of the proceeding" and "that the outcome would have changed if the alleged error had not occurred, as the evidence would have remained the same."

This court did not grant Mr. Richard's petition for writ of habeas corpus, as respondent appears to believe, because the memorandum submitted by the respondent in support of his order to show cause was deficient and nonresponsive. It granted Mr. Richard's petition for a writ of habeas corpus because no evidence in the record supports the DHB's decision. The memorandum submitted along with the respondent's motion to reconsider is superior to the memorandum submitted in support of the order to show cause

in that it addresses the specific facts of this petition. It does not, however, address the findings of this court in its order granting Mr. Richard's petition for writ of habeas corpus, and the arguments it presents are meritless and, in some instances, frivolous. The outcome would have been no different had the memorandum the respondent now submits been submitted with the response to order.

The petitioner has advised the court that he believes that restoration of the earned credit time he lost in this disciplinary action would entitle him to immediate release. (Docket No. 21). He also advised the court that prison officials tell him they have had no notice that the court has ordered restoration of his credit time, suggesting that respondent's counsel hasn't advised him of the court's October 14 opinion and order.[1] The respondent doesn't address Mr. Richard's claim that he is now entitled to immediate release, nor does he seek to stay the court's order to recalculate Mr. Richard's release date and to release him forthwith if that date has already passed. If the respondent's belated recalculation of Mr. Richard's release date confirms that he is entitled to immediate release, he must immediately be released.

For the foregoing reasons, the court DENIES the respondent's motion to alter or amend judgment (Docket No. 18). The court DIRECTS the clerk to send a certified copy of this opinion and order by certified mail to the superintendent of the Indiana State Prison and to the Indiana Attorney General's office.

---

[1] On October 23, 2008, the clerk of this court sent a certified copy of the opinion and order restoring earned credit time to the Superintendent of the Indiana State Prison. (Docket No. 17).

SO ORDERED.

DATED:   October 27, 2008  

                                          /s/ Robert L. Miller, Jr.  
                                        Chief Judge  
                                        United States District Court